FILED BY ___ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

05 SEP 12 AM 8:02

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

LUTRICIA BARNETT BUCKLEY, )
et al., )
  )
    Plaintiffs, )
  )
vs. )
  )  Civ. No. 03-2874 D/P
CITY OF MEMPHIS, et al., )
  )
    Defendants. )
  )

---

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DEFENDANT KURTIS SCHILK'S EXECUTED MEDICAL AUTHORIZATION FORM

---

Before the court is plaintiff Lutricia Barnett Buckley's Motion to Compel the Production of Defendant Kurtis Schilk's Executed Medical Authorization Form, filed on May 10, 2005 (dkt #137). Defendant Kurtis Schilk responded on May 24, 2005. Plaintiff filed a reply brief on June 23, 2005. For the following reasons, the plaintiff's motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

Plaintiff seeks an order requiring Schilk to execute a medical release authorization form, which would permit health care providers to disclose all records pertaining to Schilk's medical history, care, condition, and treatment. She contends that

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _____

Schilk's medical records are relevant for four reasons. First, the records could be used to attack Schilk's credibility, specifically his two violations of the Memphis Police Department's ("MPD") sick leave policy. At his deposition, Schilk was unable to remember the circumstances of either violation. Plaintiff suggests that Schilk could have been disciplined for lying about an illness, and if so, these circumstances would provide plaintiff with a good faith basis to challenge Schilk's credibility during cross examination at trial. Second, plaintiff argues that the medical records could be relevant to attack Schilk's credibility regarding his account of what occurred during the altercation that resulted in Buckley's death, as well as the injuries he alleges he sustained during that altercation. Third, plaintiff contends that these records are relevant on the issue of Schilk's state of mind at the time of the incidents alleged in the complaint. Finally, she claims that Schilk's history of stress, coupled with the City's prior knowledge of his stress, would support her claim that the City was deliberately indifferent.

In response, Schilk argues that, except for medical records relating to the injuries he sustained during the altercation, his medical records are not relevant. He claims that Federal Rule of Evidence 608 would prohibit the admission of extrinsic evidence relating to the sick leave violations. Further, he maintains that his state of mind is not relevant to the objective reasonableness

-2-

standard applicable in excessive force cases. In addition, Schilk asserts that his medical records are not discoverable based on the psychotherapist-patient privilege and, in any event, would not be admissible at trial under Rule 403.

## II. ANALYSIS

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Nevertheless, discovery is not without limits. For example, a court can limit discovery if it finds that "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(2)(i)-(ii).

### A. Relevance

The court concludes that Schilk's medical records are relevant and discoverable. First, records that relate to Schilk's injuries sustained during the altercation with Buckley are relevant.[1] Moreover, in order for the plaintiff to determine whether these back injuries were sustained during the Buckely altercation or whether they are pre-existing injuries (i.e. Schilk fabricated the

---

[1] Schilk does not dispute that these particular medical records are relevant.

-3-

extent of his injuries from the altercation), the plaintiff must also be allowed to review Schilk's past medical records as they relate to his history of back problems.

Second, the medical records are relevant to the issue of Schilk's credibility, specifically as they relate to his two prior violations of MPD's sick leave policy and, as mentioned above, to testing the validity of his injuries sustained during the Buckley altercation. Varga v. Rockwell Int'l Corp., 242 F.3d 693, 697 (6th Cir. 2001); see also Karr v. Four Seasons Maritime, Ltd., No. 02-3413, 2004 WL 797728, at *1-2 (E.D. La. April 12, 2004); Ward v. CSX Transp., Inc., 161 F.R.D. 38, 39 (E.D.N.C. 1995). Although Fed. R. Evid. 608(b) prohibits a party from admitting extrinsic evidence to attack a witness's character for truthfulness or untruthfulness, the plaintiff may cross-examine the witness regarding his character if she has a good faith basis to do so. See United States v. Zidell, 323 F.3d 412, 426 (6th Cir. 2003). The discovery may provide the plaintiff with that basis.

Third, Schilk's medical records may contain information relevant to issues relating to Schilk's mental state at around the time of the Buckley altercation. This information is relevant to the issue of why Schilk engaged in the acts of violence as alleged by plaintiff, and if the City was aware of this history, why it continued to keep Schilk on the police force. Schilk correctly argues that the standard for analyzing an excessive force claim is

that of objective reasonableness. See Graham v. Connor, 490 U.S. 386, 388 (1989); Walker v. Mulvihill, 83 F.3d 423, 1996 WL 200288, at *3 (6th Cir. Apr. 24, 1996)(unpublished). However, Graham does not preclude a party in an excessive force case from obtaining discovery relating to the officer's state of mind or motives during the incident in question. See, e.g., Franklin v. Messmer, 111 Fed.Appx. 386, 390 (6th Cir. 2004) (discussing how evidence of an officer's motive to retaliate against someone who had lawfully challenged the officer's authority is admissible); Nazar v. Barnett, 205 F.3d 1341, 2000 WL 92267, at *4 (6th Cir. Jan. 19, 2000)(unpublished) (concluding that jury could consider evidence that officer harbored ill-will against plaintiff based on their rivalry over a woman); Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 352 (1st Cir. 1995) (finding that evidence of racial discrimination by officer could be presented to challenge the credibility of the officer); Stoddard v. Somers, No. 03-10461, 2004 WL 2830704, at *8 n.12 (D. Mass. Dec. 7, 2004) (unpublished) (noting that an officer's "epithet-laden comment about his frustration with the plaintiff's [numerous] calls to the police" would be admissible to discredit the officer's account of the incident); Francis v. Angelo, No. 00-80-BK, 2001 WL 194926, at *9 n.12 (D. Me. Feb. 23, 2001) (unpublished) (noting that racial slurs are admissible for such purposes).

**B. Privilege**

A federal court considering a section 1983 claim applies the federal common law of privilege, and there is no federal physician-patient privilege. Hancock v. Dodson, 958 F.2d 1367, 1372-73 (6th Cir. 1992); see also United States v. Perryman, 14 Fed.Appx. 328, 329 (6th Cir. 2001) (unpublished) (holding that federal courts do not recognize a federal physician-patient privilege); Boddie v. Cranston, No. 97-3247, 1999 WL 313770, at *1 (6th Cir. May 4, 1999)(unpublished)(same); Mann v. Univ. of Cincinnati, No. 95-3195, 1997 WL 280188, at *4 (6th Cir. May 27, 1997)(unpublished)(same).

However, the Supreme Court has expressly recognized a psychotherapist-patient privilege in federal common law. See Jaffee v. Redmond, 518 U.S. 1, 15 (1996); Fed. R. Evid. 501. In Jaffee, the Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure . . . ." Id. The Court also extended that privilege to licensed social workers. Id. Thus, to the extent plaintiff's motion seeks compelled disclosure of Schilk's mental health records that reveal his communications with a licensed psychotherapist or licensed social worker, the motion is denied.

### III. CONCLUSION

For the reasons above, the Motion to Compel Production of Schilk's Executed Medical Release Authorization Form is GRANTED in

part. Defendant Schilk shall execute the medical record authorization form attached to plaintiff's motion within eleven (11) days from the date of this order. Plaintiff, however, shall not obtain Schilk's mental health records from licensed psychotherapists or licensed social workers, if any exist.

IT IS SO ORDERED.

_____
TU M. PHAM
United States Magistrate Judge

September 9, 2005
Date

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 193 in case 2:03-CV-02874 was distributed by fax, mail, or direct printing on September 12, 2005 to the parties listed.

---

Buckner Wellford
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Thomas L. Parker
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ- Memphis
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Robert D. Meyers
KIESEWETTER WISE KAPLAN & PRATHER, PLC
3725 Champion Hills Drive
Ste. 3000
Memphis, TN 38125

Jean Markowitz
CAUSEY CAYWOOD
100 North Main St.
Ste. 2400
Memphis, TN 38103

Amber Isom-Thompson
KIESEWETTER WISE KAPLAN SCHWIMMER & PRATHER, PLC
3725 Champion Hills Drive
Ste. 3000
Memphis, TN 38125

Thomas E. Hansom
HANSOM LAW OFFICE
659 Freeman Street
Memphis, TN 38122--372

Honorable Bernice Donald
US DISTRICT COURT