IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 SEP 14 PM 6:08

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

|  |  |  |
|---|---|---|
| LUTRICIA BARNETT BUCKLEY, as Administratrix of the Estate of DENVEY BUCKLEY, for the use and benefit of KATRINA and LATRICE BUCKLEY, as Next of Kin and Heirs at law of DENVEY BUCKLEY, deceased, | ) ) ) ) ) ) ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | No. 03-2874 DP |
| CITY OF MEMPHIS, THE CITY OF MEMPHIS POLICE DIVISION, OFFICER PHILLIP PENNY, OFFICER KURTIS SCHILK, and OFFICER ROBERT T. TEBBETTS, individually and in their Representative Capacities as City of Memphis Police Division Officers, | ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) |  |

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF INDIVIDUALS WITH KNOWLEDGE CONCERNING PRIOR INCIDENTS OF IN-CUSTODY DEATHS

Before the court is Plaintiff Lutricia Barnett Buckley's Motion to Compel Production of Individuals with Knowledge Concerning Prior Incidents of In-Custody Deaths, filed on May 10, 2005 (dkt #133). Defendant City of Memphis responded on May 27, 2005, and requested that the court enter a protective order

-1-

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _____

preventing the plaintiff from taking any depositions on these topics. Plaintiff filed a response to the City's motion for protective on June 20, 2005, and the City filed a reply to the plaintiff's response on July 5, 2005. For the following reasons, the plaintiff's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiff Lutricia Barnett Buckley ("Plaintiff") is the ex-wife of the decedent, Denvey Buckley ("Buckley"). Buckley had a nonviolent history of mental illness and was diagnosed as schizophrenic. According to the plaintiff, on April 19, 2002, Buckley's friends and family placed several "911" calls to the Memphis Police Department ("MPD") to report that Buckley had cut his wrists at his home. When the individual defendants arrived on the scene, Buckley was unarmed and seated on his front porch with towels wrapped around his wrists. The knife that he used was inside his home.

After assessing the situation, the individual defendants decided to prevent Buckley from returning inside his home and started to surround him. Buckley became agitated at the sight of several uniformed officers converging. Buckley attempted to return inside, but the officers forcibly restrained him. The individual defendants used their batons, allegedly hitting Buckley's head, neck, and torso. An officer of the MPD Crisis Intervention Team arrived during the altercation. Buckley got up from the porch and

began to run toward the street, where the individual defendants allegedly sprayed him with pepper spray, tackled him, handcuffed him, and continued to beat him with batons.

Plaintiff contends that emergency medical technicians arrived on the scene and allegedly waited for a few minutes as the individual defendants beat Buckley. When Buckley became unresponsive, the EMTs unsuccessfully attempted resuscitative measures. Buckley was declared dead on arrival at a nearby emergency room.

Plaintiff alleges that individual officers used excessive force while seizing Buckley in violation of his constitutional rights. She also alleges that the City has a policy or practice of failing to supervise, discipline, and train its police officers, which violated Buckley's constitutional rights.

As part of discovery, the City produced documents pertaining to individuals who have died while in MPD custody between 1998 and 2003. Plaintiff reviewed this information and identified three incidents that allegedly present facts similar to the present case – that is, the use of restraints on an individual whose mind was in an altered state, either as a result of a mental illness or drug use. Plaintiff sought the City's assistance in deposing seven officers involved in these three incidents, but the City refused to

-3-

produce those individuals. Plaintiff now seeks an order compelling their depositions. She claims that these incidents are relevant to her claims that the City and the MPD did not train its officer properly and failed to adequately investigate excessive force claims. The City opposes the motion, arguing that the information sought is not relevant, that it is unreasonably cumulative and duplicative, that Plaintiff has had ample opportunity for discovery of the information sought, and that the burden and expense of the depositions would outweigh their likely benefit.

## II. ANALYSIS

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Nevertheless, discovery is not without limits. A court may limit discovery if it determines that

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). The party opposing discovery under Rule 26(b)(2) bears the burden of demonstrating why discovery should be

limited. Merrill v. Waffle House, Inc., 227 F.R.D. 467, 470 (N.D. Tex. 2005); Cory v. Aztec Steel Bldg., Inc., 225 F.R.D. 667, 670 (D. Kan. 2005).

The court's initial inquiry is to determine whether the information sought is relevant. See Fed. R. Civ. P. 26(b)(1); Herbert v. Lando, 441 U.S. 153, 179 (1979)("Under present Rules the initial inquiry in enforcement of any discovery request is one of relevance.") Plaintiff seeks to depose seven officers who participated in incidents involving the in-custody death of a suspect. Plaintiff suggests these officers could provide information relevant to her failure to train and failure to adequately investigate excessive force claims.

A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused the plaintiff's injury. See Canton v. Harris, 489 U.S. 378, 389 (1989); Pembaur v. Cincinnati, 475 U.S. 469, 480-481 (1986); Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). "The policy or custom need not be written or explicitly stated." Galindez v. Miller, 285 F.Supp.2d 190, 198 (D. Conn. 2003). "A § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995). A plaintiff seeking to establish a custom of failing to train or investigate

adequately may (and sometimes, must) provide evidence of other occurrences in which the municipality did not train or did not investigate adequately. See Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir. 1986)("We have no doubt that, in the context of a theory that the City negligently supervised its officers in their use of force, the evidence that a number of claims of police brutality had been made by other persons against the City, together with evidence as to the City's treatment of these claims, was relevant."); Woods v. City of Wellston, 2005 WL 1406105, at *11-14 (S.D. Ohio Jun. 15, 2005)(unpublished); Lewis v. City of Chicago, 2005 WL 1026692, at *8 (N.D. Ill. Apr. 26, 2005)(unpublished); Galindez, 285 F.Supp.2d at 198-200.

The three in-custody deaths at issue in this motion relate to the arrests of Charles Johnson, Allen Williams, and Carlos Barnum. Of the three in-custody deaths, only one involves an officer in this case (Officer Schilk was present at and possibly directly involved in the Barnum arrest). Regarding the Johnson and Williams arrests, these incidents bear little if any similarity to the Buckley incident. With respect to Johnson, that arrest involved two private church security guards and, apparently, Johnson died prior to any involvement by an MPD officer. (See Ex. 1 attached to Pla. Mem.). The medical examiner determined that Johnson died of natural causes as a result of heart disease, and noted there were no obvious signs of trauma to Johnson. Id. With respect to Williams, his arrest occurred seven months after the Buckley

incident. See Woods, 2005 WL 1406105, at *12 ("Once an individual's rights have been violated, a subsequent failure to conduct a meaningful investigation cannot logically be the 'moving force' behind the alleged constitutional deprivation."). Moreover, the medical examiner concluded that Williams died of natural causes with cocaine toxicity as a contributor, and with no indication of trauma to Williams which would have caused his death. (See Ex. 2 attached to Pla. Mem.). The court finds that the facts of these two unrelated in-custody deaths are completely different from the present case and thus have no relevance to any of the parties' claims or defenses, including the failure to investigate or train allegations.

With respect to the Barnum arrest, as mentioned earlier, it is undisputed that defendant Schilk was present at some point during the this arrest, and thus his potential personal involvement in this prior in-custody death of a suspect is relevant to this case. (See Ex. 3 to Pla. Mem.). Furthermore, during this arrest, Barnum was struck at least twice in the head with a police flashlight, handcuffed, pushed into a squad car, and subsequently had a seizure and died of cocaine overdose while sitting in the back seat of the squad car.[1] Id. According to an affidavit attached to plaintiff's response from Marilyn Barnum, Officer Schilk was the officer who

---

[1] However, according to Marilyn Barnum, one officer constantly hit Barnum on top of his head, and another officer struck him under his chin. Madalyn Sommerville, another witness, stated that one of the officers struck Barnum more than ten times on the head with his flashlight.

assaulted her son with the flashlight, and also threatened to spray Ms. Barnum with mace.[2] An autopsy report revealed signs of blunt trauma to the head area and a small laceration near the left eye. Id. Although the medical examiner concluded that the physical injuries were minor and did not contribute to Barnum's death,[3] the court concludes that for purposes of discovery, this particular in-custody death is sufficiently similar to the Buckley incident to warrant the discovery sought by plaintiff. Specifically, this discovery is relevant to support or refute the plaintiff's belief that defendant Schilk was directly involved in a prior assault of a suspect who died in MPD custody. Moreover, if Ms. Barnum's account of the incident is true, the information would be relevant to plaintiff's claim that the City failed to conduct an adequate investigation and that the City had knowledge of Schilk's propensity for violent behavior.

### III. CONCLUSION

For the reasons above, the Motion to Compel Production of Individuals with Knowledge Concerning Prior Incidents of In-Custody Deaths is GRANTED in part and DENIED in part. Plaintiff may depose MPD Officers Harold Tellez, David W. Royal, and W. Kingery concerning the in-custody death of Carlos Barnum. The motion is

---

[2] Ms. Barnum's affidavit appears to be inconsistent with statements she made to ISB in 1998.

[3] The same medical examiner also conducted the autopsy on Buckley. (See Ex. 2 to City's Reply).

DENIED with respect to the in-custody deaths of Johnson and Williams.

IT IS SO ORDERED.

_____
TU M. PHAM
United States Magistrate Judge

September 14, 2005
_____
Date

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 194 in case 2:03-CV-02874 was distributed by fax, mail, or direct printing on September 15, 2005 to the parties listed.

---

Thomas E. Hansom
HANSOM LAW OFFICE
659 Freeman Street
Memphis, TN 38122--372

Thomas L. Parker
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ- Memphis
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Buckner Wellford
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Amber Isom-Thompson
KIESEWETTER WISE KAPLAN SCHWIMMER & PRATHER, PLC
3725 Champion Hills Drive
Ste. 3000
Memphis, TN 38125

Robert D. Meyers
KIESEWETTER WISE KAPLAN & PRATHER, PLC
3725 Champion Hills Drive
Ste. 3000
Memphis, TN 38125

Jean Markowitz
CAUSEY CAYWOOD
100 North Main St.
Ste. 2400
Memphis, TN 38103

Honorable Bernice Donald
US DISTRICT COURT